| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michelle R. Ghidotti-Gonsalves (SBN: 232837)<br>Jennifer R. Bergh (SBN: 305219)<br>The Law Offices of Michelle Ghidotti<br>5120 E. La Palma Ave., Ste. 206<br>Anaheim Hills, CA  92807<br>Phone: (949) 354-2601<br>Facsimile: (949) 200-4381<br>Email: mghidotti@ghidottilaw.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>Ulises Caldera | CASE NO.: 2:16-bk-26918-SK |
|---|---|
| | CHAPTER: 13 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 02/08/2017 |
| | TIME: 8:30 a.m. |
| Debtor(s). | COURTROOM: 1575 |

| **Movant:** JTF Rose Inc., A California Corporation, DBA Rose Financial, its successors and assigns |
|---|

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court set an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 1                          **F 4001-1.RFS.RP.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 01/13/2017

The Law Offices of Michelle Ghidotti
_____
Printed name of law firm (if applicable)

Michelle R. Ghidotti-Gonsalves, Esq.
_____
Printed name of individual Movant or attorney for Movant

/s/Michelle R. Ghidotti-Gonsalves
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 2                         F 4001-1.RFS.RP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 14555 Jeremie St.
   *Unit/suite number*:
   *City, state, zip code*: Baldwin Park, CA 91706

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __A___):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☐ 11  ☐ 12  ☒ 13 was filed on (*date*) __12/28/2016__.

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay**:

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☒ The bankruptcy case was filed in bad faith.

       (A) ☒ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☒ Other (*see attached continuation page*).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                          Page 3                              **F 4001-1.RFS.RP.MOTION**

(3) ☒ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
which is  ☐ prepetition  ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☒ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit C____.

d. ☐ Other:

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                              Page 4                                  **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1) ☐ 11 U.S.C. § 362(d)(2) ☐ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

4.  ☒ Confirmation that there is no stay in effect.

5.  ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☒ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☒ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion
    ☐ without further notice, or ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 01/13/2017

                      The Law Offices of Michelle Ghidotti
                      Printed name of law firm (*if applicable*)
                      Michelle R. Ghidotti-Gonsalves, Esq.
                      Printed name of individual Movant or attorney for Movant

                      /s/Michelle R. Ghidotti-Gonsalves
                      Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, *(print name of Declarant)* Jeff T.F. Rose _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because *(specify)*:

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as *(state title and capacity)*:

   c. ☒ Other *(specify)*: I am the Vice-President of Movant

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other *(see attached)*:

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit B ____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit A ____.

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other *(specify)*:

4. a. The address of the Property is:

      *Street address:*14555 Jeremie St.
      *Unit/suite no.:*
      *City, state, zip code:*Baldwin Park, CA 91706

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
      Recorded in the Official Records of Los Angeles County, as Document No.: 2007-2490441.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District ofCalifornia.

June 2014                          Page 6                          F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

   a. ☒ Debtor's principal residence    b. ☐ Other residence
   c. ☐ Multi-unit residential    d. ☐ Commercial
   e. ☐ Industrial    f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☒ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☒ The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.

   f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
      The deed was recorded on (*date*) _____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit A ____.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit B ____.

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 34,766.27 |
| b. | Accrued interest: | $ | $ | $ 6,805.13 |
| c. | Late charges | $ | $ | $ 1,587.20 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 39,877.86 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[2,170.00          ] |
| g. | TOTAL CLAIM as of (*date*): 12/29/2016 | $ | $ | $80,866.46 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) 12/22/2015 __ or ☐ none recorded.

   b. Notice of sale recorded on (*date*) 12/05/2016 __ or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) 12/29/2016 __ or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) 01/19/2017 __ or ☐ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*      Page 7      **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

   b. Number of payments that have come due and were not made: _____. Total amount: $_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

   An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $_____, established by:

   (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

   (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

   (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

   (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

   Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

   (1) ☐ Preliminary title report.

   (2) ☐ Relevant portions of the Debtor's schedules.

   (3) ☐ Other (*specify*):

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
   By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 8                                      F 4001-1.RFS.RP.MOTION

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: 01/27/2017 ___.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: 02/16/2017 ___.
A plan was confirmed on the following date *(if applicable)*: _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total | |
|---|---|---|---|---|
| 1 | | $ 426.69 | $ 426.69 | 01/01/2017 Payment |
| | 1 | $ 25.58 | $ 25.58 | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                       $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                               $ 1,031.00
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                      $[                    ]

TOTAL POSTPETITION DELINQUENCY:                      $ 1,483.27

g. Future payments due by time of anticipated hearing date *(if applicable)*: 1 _____.
An additional payment of $ 426.69 _____ will come due on 02/01/2017 ___, and on
the 1 ___ day of each month thereafter. If the payment is not received by the 10 ___ day of the month, a late
charge of $25.58 _____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$ - _____ received on *(date)* - _____
$ - _____ received on *(date)* - _____
$ - _____ received on *(date)* - _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☒ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (*specify*):

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☒ Multiple bankruptcy cases affecting the Property include:

      1. Case name: In re Caldera
         Chapter: 13    Case number: 2:16-bk-11690
         Date filed: 02/10/2016    Date discharged: _____    Date dismissed: 11/18/2016
         Relief from stay regarding the Property ☒ was ☐ was not granted.

      2. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      3. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☒ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/17/17 | Jeff TF Rose | _signature_ |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2014_                          Page 11                          **F 4001-1.RFS.RP.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

5120 E. La Palma Ave., Ste. 206
Anaheim Hills, CA 92807

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _1/18/2017____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel: Onyinye N Anyama, onyi@anyamalaw.com, anyamainfo@gmail.com;
info_anyama@ecf.courtdrive.com
Chapter 13 Trustee: Kathy A Dockery (TR), efiling@CH13LA.com
U.S. Trustee: United States Trustee (LA), ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _1/18/2017____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: Ulises Caldera, 14555 Jeremie Street, Baldwin Park, CA 91706 (U.S. Mail)
Judge: Honorable Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012 (U.S. Mail)
Lienholder: Chase Mtg, PO Box 24696, Columbus, OH 43224 (U.S. Mail)

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 1/18/2017 | Jeremy Romero | /s/ Jeremy Romero |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014    Page 12    **F 4001-1.RFS.RP.MOTION**

Case No. 2:16-bk-26918-SK
Debtor:  Ulises Caldera
Continuation Page in Support of Motion for Relief

# I.
## LOAN HISTORY

On or about October 31, 2005, Ulises Caldera ("**Debtor**") executed a First Position Note in favor of Long Beach Mortgage Company, secured by a Deed of Trust ("**First DOT**").  On October 27, 2007, Debtor executed and delivered To JTF Rose Inc., A California Corporation, DBA Rose Financial ("**Movant**"), a Note, in the principal amount of $38,600.00.   Concurrently therewith, and as security for the Note, Debtor executed and delivered to Movant, a Deed of Trust, recorded on November 6, 2007, in the Official Records of Los Angeles County, California, as Document No.: 2007-2490441 ("**Second DOT**").  Movant holds all beneficial interest under the Second Position Note and Deed of Trust.

In or around July of 2015, Debtor defaulted on the Loan which led to the commencement of Foreclosure proceedings.  Debtor is due for the July 1, 2015 payment and all subsequent payments.  Movant is informed and believes that Debtor has also defaulted on the First DOT.   A Notice of Default and Election to Sell under the First DOT was recorded on August 18, 2015.  Movant recorded a Notice of Default and Election to Sell Under the Second DOT on December 22, 2015, in the Official Records of Los Angeles County, as Document No.: 2015-1606055.

To protect its interest under the Second DOT, on or about December 18, 2015, Movant paid $24,206.84 to the holder of the First DOT to reinstate the first trust deed loan to prevent the first trust deed Sale from going forward.

On February 10, 2016, Debtor commenced a Chapter 13 Bankruptcy Petition, Petition No.: 2:16-bk-11690-NB ("**First Petition**").  In connection with the First Petition Debtor filed a Chapter 13 Plan which provided that Debtor would cure Movant's Note and Deed of Trust in full through the Chapter 13 Plan.  On April 20, 2016 and order was entered confirming Debtor's Chapter 13 Plan.  On October 12, 2016, Movant caused to be filed a Motion for Relief.  An Order was entered granting Movant's Motion for Relief on November 3, 2016.  On November 20, 2016, an Order and Notice of Dismissal was entered, due to Debtor's failure to make Plan payments.

Thereafter, on December 5, 2016, Movant caused to be recorded a Notice of Trustee's Sale, in the Official Records of Los Angeles County, as Document No.: 20161525189, with an original sale date of December 29, 2016.  One (1) day before Movant's scheduled Sale, Debtor filed the Instant Petition (the "**Instant Petition**").

## II.

### The Petition Was Part of a Scheme to Delay, Hinder, or Defraud Creditors That Involved the Filing of Multiple Petitions Affecting the Property:

Bad faith within the Chapter 13 context is measured by the totality of circumstances. In re Leavitt, 171 F.3d 1219, 1224 (9th Cir.1999); see also In re Eisen, 14 F.3d 469, 470 (9th Cir. 1994).   A Chapter 13 petition filed in bad faith may be dismissed "for cause" pursuant to 11 U.S.C. § 1307(c). In re Powers, 135 B.R. 980, 991 (Bankr.C.D.Cal.1991); In re Love, 957 F.2d 1350, 1354 (7th Cir.1992); In re Gier, 986 F.2d 1326, 1329 (10th Cir.1993).   To determine if a petition has been filed in bad faith

courts are guided by the standards used to evaluate whether a plan has been proposed in

bad faith. 11 U.S.C. § 1325(a)(3); <u>Powers</u>, 135 B.R. at 994; <u>Gier</u>, 986 F.2d at 1329.

"A judge should ask whether the debtor "misrepresented facts in his [petition or]

plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13

[petition or] plan in an inequitable manner." Id. at 1390.  "A debtor's history of filings and

dismissals is relevant." <u>In re Eisen</u>, 14 F.3d 469, 470 (9th Cir. 1994) *citing* <u>In re Nash</u>, 765

F.2d 1410, 1415 (9th Cir.1985).  11 U.S.C. Section 1325(a)(7) requires that the action of

the debtor in filing the petition was in good faith.  "Once at issue, the burden falls on the

bankruptcy petitioner to establish that the petition has been filed in good faith." <u>In re</u>

<u>Toibb</u>, 902 F.2d 14 (8th Cir. 1990).  Under 11 U.S.C. Section 1325(a)(3), the debtor bears

the burden to prove that the Petition was not filed in bad faith. <u>In re Love</u>, 957 F.2d 1350,

1355 (7th Cir.1992).

Here, Debtor has filed two Bankruptcy Petitions within twelve (12) months.  The

instant position is presumptively filed in bad faith.  The First Petition was filed under

Chapter 13 of the Bankruptcy Code.  Debtor proposed and confirmed a Chapter 13 Plan

that was not feasible.  At the time of the First Petition Debtor's Net Income was $746.02,

Pursuant to Debtor's Schedule J.   Debtor's Net Income could not fund the proposed

Chapter 13 Plan.  Debtor's First Petition was dismissed because the Debtor did not and

could not make the Chapter 13 Plan payments, due to Debtor's available Net Income.

Debtor does not offer any proof to rebut the presumption that the Instant Petition

was not filed in good faith.  Debtor filed the Petition one (1) day before Movant's

Scheduled Sale, as nothing more than another delay tactic.  Debtor's Net Income is

$744.01, pursuant to Debtor's Schedule J.   Since Debtor filed the First Petition, Debtor's available Net Income has not increased and his financial position has similarly not improved.   Debtor's proposed Plan is not feasible taking into consideration Debtor's available net income.   The absence of sufficient income to fund a feasible plan strongly suggests bad faith. In re Kollar, 356 B.R. 657 (Bankr. M.D. Fla. 2006); In re Nealen, 407 B.R. 194,201 (Bankr. W.D. Penn. 2009).   Debtor cannot confirm a Chapter 13 Plan that fully provides for Movant.

Movant has not receive a post-petition payment from Debtor in connection with the First Petition or Second Petition.   Movant has not received a payment from the Debtor in eighteen (18) months.

### III.

### Conclusion

Based on the foregoing, Movants requests that this Court grant Movant Relief from the Automatic Stay.   Movant further requests that the Court waive the 14 day stay pursuant to Bankruptcy Rule 4001(a)(3).

# EXHIBIT "A"

RECORDING REQUESTED
LandAmerica Commonwealth Title

WHEN RECORDED MAIL TO
JTF ROSE INC., A CALIFORNIA
CORPORATION, DBA ROSE
1404 E. KATELLA

ORANGE, CALIFORNIA 92867



11/06/07

2007 2490441

REDACTED

_____[Space Above This Line For Recording Data]_____

## DEED OF TRUST

The terms of this Loan
contain provisions which
will require a Balloon
Payment at Maturity.

THIS DEED OF TRUST ("Security Instrument") is made on    OCTOBER 27, 2007
The trustor is ULISES CALDERA, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

("Borrower").

The trustee is COMMONWEALTH TITLE COMPANY,

("Trustee").

The beneficiary is JTF ROSE INC., A CALIFORNIA CORPORATION, DBA ROSE FINANCIAL

which is organized and existing under the laws of   CALIFORNIA                  , and whose address is
1404 E. KATELLA, ORANGE, CALIFORNIA 92867
("Lender"). Borrower owes Lender the principal sum of THIRTY-EIGHT THOUSAND SIX HUNDRED
AND NO/100                         Dollars (U.S. $ 38,600.00          ). This debt is
evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on     NOVEMBER 1, 2023
.  This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with
power of sale, the following described property located in    LOS ANGELES              County, California:
ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:
LOT 21 OF TRACT NO. 7853, IN THE CITY OF BALDWIN PARK, AS
SHOWN ON A MAP RECORDED IN BOOK 73, PAGE(S) 70 AND 71, OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S NUMBER: 8554-009-005

which has the address of 14555 JEREMIE STREET, BALDWIN PARK
[Street]
[City]
California  91706          ("Property Address");
[Zip Code]

CALIFORNIA - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
HF434005 8/97            6667B 14844            Page 1 of 7

Form 3005 9/90
Amended 12/83

U.C.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

REDACTED

CALIFORNIA - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
HP434006 8/97        655/78.14544        Page 2 of 7

Form 3005 9/90
Amended 12/93

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

LOAN NO. REDACT

CALIFORNIA - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
HP434007-8/97    65578-14544    Page 3 of 7

U . C .

Form 3005   9/90
Amended 12/93

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

LOAN NO. REDACTED

CALIFORNIA - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
HP134008-8/07        65678.14544                        Page 4 of 7

Form 3005   9/90
Amended 12/93

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

LOAN NO. REDACTED

CALIFORNIA - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
HP434000-8/97      65578.14544      Page 5 of 7

Form 3005   9/90
Amended 12/03

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law.  After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Reconveyance.  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it.  Such person or persons shall pay any recordation costs.

23. Substitute Trustee.  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24. Request for Notices. Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

25. Statement of Obligation Fee.  Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

LOAN NO. REDACTED

CALIFORNIA - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
HF434010-8/97        6SS78.14544        Page 6 of 7

Form 3005  9/90
Amended 12/93

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☑ V.A. Rider | ☑ Other(s) [specify] | |

RECONVEYANCE RIDER

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ 10-27-07 _____ (Seal)
ULISES CALDERA                              -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ [Space Below This Line For Acknowledgement] _____

STATE OF CALIFORNIA,
COUNTY OF  LOS ANGELES              }

On OCTOBER 27, 2007    before me, EMILY S. MILLER, NOTARY PUBLIC
personally appeared  ULISES CALDERA

~~personally know to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument and person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____ Emily S. Miller _____ (Seal)

EMILY S. MILLER
Commission # 1710859
Notary Public - California
Orange County
My Comm. Expires Dec 14, 2010

LOAN NO. REDACTED
CALIFORNIA - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT                         Form 3005   9/90
HP234011-8/97            86578.14544                     Page 7 of 7                Amended 12/93



## RECONVEYANCE RIDER TO
## MORTGAGE OR DEED OF TRUST

This Rider to Mortgage or Deed of Trust is attached and made a part of the Mortgage or Deed of Trust ("Security Instrument") dated    OCTOBER 27, 2007                            by and between
ULISES CALDERA

                                                                                                    ("Borrower")
and JTF ROSE INC., A CALIFORNIA CORPORATION, DBA ROSE FINANCIAL
                                                                                                    ("Lender")
which secures a Note or Revolving Credit Agreement in the original principal amount or line of credit
of $ 38,600.00                            . The Security Instrument is hereby modified and amended to
include the following provision:

> **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Notes or Revolving Credit Agreements evidencing the debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty. If there is no Trustee under the Security Instrument, Lender shall release the Security Instrument in accordance with applicable law. Unless prohibited by applicable law, the Trustee or Lender may charge a fee for services rendered in connection with the preparation, execution or recordation of a reconveyance or release of lien, demand statement or request for a reconveyance or release of lien. The amount of any reconveyance and release or demand fee shall be in the discretion of Trustee or Lender, and shall not exceed the maximum amount, if any, set forth in applicable law for such fees.

The provisions of this Rider shall control over and supersede any inconsistent provisions in the Security Instrument.

| | | | |
|---|---|---|---|
| _Ulises Caldera_ 10-27-07 | | | |
| Borrower ULISES CALDERA | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |

RECONVEYANCE RIDER TO MORTGAGE OR DEED OF TRUST
HFG31004-6/0 REDACTED

10

GOVERNMENT CODE 27361.7

I certify under penalty that the Notary Seal on the document to which this statement is attached read as follows:

NAME OF THE NOTARY:  Emily S. Miller

DATE COMMISSION EXPIRES:  December 14, 2010

COUNTY WHERE BOND IS FILED:  Orange

COMMISSION NUMBER: 1710859                    VENDOR NUMBER:  NNA1

I certify under penalty of perjury and the laws of the State of California that the illegible portion of this document to which this statement is attached reads as follows:

PLACE OF EXECUTION Irvine                DATE  11/1/2007

SIGNATURE  _C. Stewart_

*personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

LOAN NO. REDACTE

## RIDER TO NOTE AND DEED OF TRUST

THIS RIDER is made this 27th day of   OCTOBER, 2007        , and is incorporated into and shall be deemed to amend and supplement both the Note and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to JTF ROSE INC., A CALIFORNIA CORPORATION, DBA ROSE FINANCIAL,

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
14555 JEREMIE STREET
BALDWIN PARK, CALIFORNIA 91706

[Property Address]

(Check box, if applicable)

1. ( X ) PREPAYMENT PENALTY - FIRST (      3    ) YEARS OF NOTE

If an amount in excess of 20% of the Principal shown on the note is paid in any 12-month period within      3 year(s) from the Date shown above, I agree to pay a prepayment penalty in an amount equal to the interest on the amount prepaid in excess of 20% of the Principal shown on the note for six months at the Agreed Rate of Interest in effect at the time of prepayment.

This prepayment peanlty applies whether prepayment is voluntary or involuntary (even if it results from your acceleration of the debt in the event of my non-performance of any of the terms of this Note or the Deed of Trust that secures this loan).

2. ( X ) BALLOON PAYMENT

This loan is payable in full at the end of        16    years. You must repay the entire principal balance of the loan and the unpaid interest then due. The lender is under no obligation to refinance the loan at that time. You will therefore be required to make payment out of other assets you may own, or you will have to find a lender willing to lend you the money at prevailing market rates, which may be considerably higher or lower than the interest rate on this loan. If you refinance this loan at maturity, you may have to pay some or all closing costs normally associated with a new loan, even if you obtain refinancing from the same lender.

3. ( X ) FEE FOR RETURN OF DISHONORED CHECKS:

Borrowers agree to pay a fee of $25.00 for return by a depository institution to Lender of a dishonored check, negotiable order of withdrawal or share draft.

| | |
|---|---|
| _ULISES CALDERA_   10-22-07 | _____ |
| ULISES CALDERA              Date | Date |
| _____ | _____ |
| Date | Date |
| _____ | _____ |
| Date | Date |

REDACTED

## BALLOON PAYMENT RIDER / DISCLOSURE

NOTICE:  READ BEFORE SIGNING YOUR LOAN DOCUMENTS

This loan provides for     191     payments of principal and interest of $     426.69
each.  A final payment of all principal and accrued interest of $          33,386.60          * will be due and
payable on    NOVEMBER 1, 2023          .

*  This is an estimate assuming that all payments are made exactly on the date that they are due.

I/we hereby acknowledge receipt of the above notice concerning the balloon payment provisions of this loan.

| | |
|---|---|
| _(signature)_    10-27-07 | |
| Borrower | Date     Borrower | Date |
| ULISES  CALDERA | |
| | |
| Borrower | Date     Borrower | Date |
| | |
| Borrower | Date     Borrower | Date |

REDACTED

# EXHIBIT "B"

LOAN NO. REDACTED

## NOTE

OCTOBER 27, 2007                    ORANGE,  CALIFORNIA

                                    [City]                              [State]

14555 JEREMIE STREET, BALDWIN PARK, CALIFORNIA 91706
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  38,600.00          (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is  JTF ROSE INC., A CALIFORNIA CORPORATION, DBA ROSE FINANCIAL,
I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of  12.990     %.  The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the   1st   day of each month beginning on  DECEMBER 1, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Except as otherwise provided by the Security Instrument, my monthly payments will be applied first to interest before principal.  If, on    NOVEMBER 1, 2023 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
I will make my monthly payments at  1404 E. KATELLA, ORANGE, CALIFORNIA 92867
                                        or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $  426.69

### 4.  PREPAYMENT PRIVILEGE - FIRST ( 3 ) YEARS OF NOTE

The undersigned may prepay an amount not exceeding twenty percent (20%) of the original principal amount in any twelve month period commencing from the date of the Promissory Note or anniversary dates thereof without penalty.  If the aggregate amount of principal prepaid in any twelve month period exceeds twenty percent (20%) of the original amount of the loan, then as consideration for the acceptance of such prepayment and in addition to any other sum payable hereunder, the undersigned agrees to pay the holder a sum equal to six (6) months interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount at the rate specified in the Promissory Note.  Such additional sums shall be paid whether prepayment is voluntary including any prepayment effected by the exercise of any acceleration provisions contained in the Promissory Note.

### 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial prepayment.

### 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of   10  calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   6.00      % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  That date must at least 10 days after the date on which the notice is delivered or mailed to me.
(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE FIXED RATE NOTE - LSB
REDACTED                                    Page 1 of 2

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 10·22·0 7 _____ (Seal)    _____ (Seal)
ULISES CALDERA                         Borrower                                    Borrower

_____ (Seal)    _____ (Seal)
                                 Borrower                                    Borrower

_____ (Seal)    _____ (Seal)
                                 Borrower                                    Borrower

(Sign Original Only)

PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
SIGNED BY _____

MULTISTATE FIXED RATE NOTE - 1 SB
REDACTED                          Page 2 of 2

# EXHIBIT "C"

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Ulises Caldera** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **2:16-bk-26918-SK** |
| (if known) | |

☐ Check if this is an
   amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|---|
| **2.1 Chase Mtg** Creditor's Name | **Describe the property that secures the claim:** **14555 Jeremie Street Baldwin Park, CA 91706  Los Angeles County FMV per www.eppraisal.com is 435,436; taking into  consideration the 6% (26,126.16) for  cost of sale the true FMV is 409,309.84** | $210,000.00 | $409,309.84 | $0.00 |

**Po Box 24696**
**Columbus, OH 43224**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Deed of trust**

**Opened**
**11/01/05**
**Last Active**
Date debt was incurred **12/22/15**    Last 4 digits of account number    **3803**

| **2.2 JFT Ross Inc., A California Corpora** Creditor's Name | **Describe the property that secures the claim:** **14555 Jeremie Street Baldwin Park, CA 91706  Los Angeles County FMV per www.eppraisal.com is 435,436; taking into  consideration the 6% (26,126.16) for  cost of sale the true FMV is 409,309.84** | $37,000.00 | $409,309.84 | $0.00 |
|---|---|---|---|---|

**1404 E. Katella**
**Orange, CA 92867**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Debtor 1 | **Ulises Caldera** | | | Case number (if know) | **2:16-bk-26918-SK** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**Who owes the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)    **Deed of Trust**

Date debt was incurred  **10/2007**        Last 4 digits of account number    **1023**

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | **$247,000.00** |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$247,000.00** |

**Part 2:**   List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name, Number, Street, City, State & Zip Code
**Assured Lender Services, Inc.**
**2552 Walnut Avenue**
**Tustin, CA 92780**

On which line in Part 1 did you enter the creditor?   **2.2**

Last 4 digits of account number   **0096**

☐ Name, Number, Street, City, State & Zip Code
**Trustee Corps**
**17100 Gillette Ave.**
**Irvine, CA 92614**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number   **8222**

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                        Best Case Bankruptcy